CHARASON REALTY CORPORATION, Plaintiff, *v.* BANK OF NEW YORK, as Trustee under the Will of FLORENCE FISH, Deceased, et al., Defendants.

First Department, May 26, 1953.

*Gerard I. Walters* of counsel (*Durand H. Van Doren* with him on the brief; *Simpson Thacher & Bartlett,* attorneys), for plaintiff.

*Thomas B. Fenlon* of counsel (*Emmet, Marvin & Martin,* attorneys), for defendants.

*Per Curiam.* The parties to this controversy, submitted upon agreed facts (Civ. Prac. Act, § 546), seek a determination of the annual rent payable for the first ten years of the renewal term of a lease. The question is whether the renewal rent is to be based upon the rent provided in the original lease, or upon that provided in a modification agreement.

Plaintiff tenant claims the rent should be the same as that payable for the last year (1951) of the original term, as fixed by a written modification agreement entered into in 1941. The modification was approved by order of the Supreme Court. Court approval was necessary because the landlord was a trustee acting pursuant to its powers under a will. The modification fixed the rent at " $10,000 per annum  *  *  *  plus an amount equivalent to fifty percent (50%) of all income received from the said premises each fiscal year  *  *  *  after deducting the said base rent of $10,000 per annum, operating expenses, real estate taxes and insurance premiums paid by the Lessee ".

Defendants, trustees, executors and beneficiaries under a will, including the trustee bank, landlord under the lease, own interests in the real property here involved. They claim the rent payable for the first ten years of the renewal term should be fixed at $50,000 per annum, which is the amount originally provided in the lease as the rent for the last year of the original term.

The lease provides that the right of renewal, with respect to the first renewal term of twenty-one years, may be exercised " on the same terms, conditions and provisions as contained in this * * * lease," except (insofar as is here material) " as to the rent, which shall be fixed and determined for such renewal term, in manner hereinafter provided."

The lease provides further that rent during each renewal term, if not otherwise agreed upon by the parties, shall be fixed by appraisal for the first ten years thereof, and by a second appraisal for the remainder of the renewal term. The renewal rent was to be at the rate of 6% per annum of the appraised value of the demised premises, exclusive of building, subject only to the following condition: " except that in no case whatsoever shall the rent for any renewal term, or any part thereof, be less than the rent for the last year of the previous term or part thereof."

The parties have agreed that 6% of the value of the premises, excluding the building, would be less than the rent payable for the last year of the original term. No appraisal is required, therefore, and the above-quoted provision, requiring that the rent payable for the first ten years of the renewal term shall be the same as the rent for the last year of the previous (original) term, becomes operative.

Defendants claim that the " rent for the last year of the previous term " is the rent fixed for that year in the *original* lease ($50,000), and not the rent fixed in the 1941 modification agreement. *Raleigh Associates, Inc.,* v. *Henry* (302 N. Y. 467) a case highly analogous upon the facts, held to the contrary. The *Raleigh* case held that the revised base rent, as fixed by a modification agreement, " traveled into the renewal lease in accordance with the formula prescribed when the tenant unequivocally declared its intention to renew the lease ' as modified ' " (p. 475).

Where, as here, an agreement is entered into reducing the rent fixed in a lease, the burden of providing against later applicability of the decrease, as a matter of practical considera-

tions, falls upon the landlord. It is the landlord who stands to lose, and the tenant to gain, if the modification becomes applicable to a renewal term. There is nothing in this record to show that the landlord took any steps to render the decrease inapplicable to such renewal. As in the *Raleigh* case, the lower rent fixed by agreement " traveled into the renewal lease ".

It is immaterial that on its face the departure from the original rental provision in this case was a more involved one than that in the *Raleigh* case, where the reduction was simply from $25,000 to $12,000 per annum. Defendants claim that the burden of paying operating expenses, real estate taxes and insurance premiums has been shifted from tenant to landlord to the extent of one half, because these expenses are deductible in computing the annual income from the premises. To whatever extent this is true, that is what the parties agreed to in the modification agreement, and what the court approved.

It should be noted that the lease required the original tenant, plaintiff's assignor, to demolish at its own expense the then existing building and to erect a new one. This it did at a cost of over $650,000. Thus, plaintiff, by virtue of the assignment, had, in a sense, an " equity " in the property which could be destroyed by too burdensome rent. This circumstance is relevant on the question of the intention of the modification.

Of course, in the *Raleigh* case (p. 473) the court concerned itself with the intent of the parties " only to the extent that they evidenced what they intended by what they wrote ". We do no more here, and find that nothing in the modification agreement limits its effect in the manner defendants contend. Had the parties intended the original $50,000 figure to continue as the minimum renewal rental in favor of the modification to a flexible formula based primarily upon income less expenses, they could easily have so provided. Instead they included in the modification agreement a provision (similar in purport to one found in the *Raleigh* case) that " Except as herein and hereinbefore modified the said [original] Lease hereinbefore referred to is in all respects ratified and confirmed."

Finally, it is clear that the court which approved the 1941 modification agreement had before it all the documents, including the original lease. It must be deemed to have contemplated the effect of the reduction upon the terms of a subsequent renewal when approval was given.

Plaintiff should be entitled to judgment declaring the rent payable for the first ten years of the renewal term to be $10,000

per annum, plus an amount equal to 50% of all income received from the premises each fiscal year ending August 31st, after deducting said base rent of $10,000, operating expenses, real estate taxes and insurance premiums paid by plaintiff, in accordance with the terms of the agreement dated April 3, 1941. Settle order.

PECK, P. J., GLENNON, DORE, COHN and BREITEL, JJ., concur.

Judgment directed in favor of the plaintiff. Settle order on notice. [See *post*, p. 866.]